**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CARCHARADON, LLC and DAVID SWEIG, | ) ) ) | |
| Plaintiffs, | ) ) | No. 21 C 2890 |
| v. | ) ) | |
| ASCEND ROBOTICS, LLC, | ) ) | |
| Defendant. | ) ) | |
| CARCHARADON, LLC and DAVID SWEIG, | ) ) ) | |
| Plaintiffs, | ) ) | No. 21 C 6841 |
| v. | ) ) | Judge Sara L. Ellis |
| DAVID ASKEY, | ) ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Plaintiffs Carcharadon, LLC and David Sweig ("Plaintiffs") bring two substantially similar lawsuits against Defendants Ascend Robotics, LLC, and David Askey ("Defendants"), alleging that Defendants lied to Plaintiffs to induce them to work on a joint venture and then cut Plaintiffs out of the joint venture and profited from it themselves. Plaintiffs bring claims of fraud, promissory fraud, negligent misrepresentation, equitable estoppel, breach of fiduciary duty, and promissory estoppel against both Defendants and claims of tortious interference with contract, tortious interference with business expectancy, and quantum meruit against Ascend Robotics, LLC, only.

Defendants now move to dismiss Plaintiffs' claims under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). The Court denies in part and grants in part the motions to dismiss based on the following grounds. The Court finds it has personal jurisdiction over Ascend Robotics, LLC and denies Ascend's motion to dismiss under Rule 12(b)(2). The Court, however, dismisses Plaintiffs' fraud, negligent misrepresentation, and equitable estoppel claims because they are based on nonactionable statements about the future. Because Plaintiffs do not allege a "scheme to defraud," the Court also dismisses the promissory fraud claims. And the Court dismisses the negligent misrepresentation claims for the additional reason that Plaintiffs fail to plead that Defendants were in the business of providing information for others to rely on in their business transactions, as required under Illinois law, and because Plaintiffs cannot plead reliance on their own or draft statements. Because Plaintiffs do not plead that Defendants owed them a fiduciary duty, the Court dismisses those breach claims. The Court dismisses Plaintiffs' tortious interference with contract claim because Plaintiffs do not plead that Ascend directed any action toward a real third party and dismisses the business expectancy claim, which Plaintiffs' waived argument on, as insufficiently pleaded. Finally, the Court dismisses the equitable estoppel claim because it is not an independent cause of action. The Court dismisses all these claims without prejudice. The remaining claims of promissory estoppel (against Ascend and Askey) and quantum meruit (against Ascend only) withstand these motions to dismiss.

BACKGROUND[1]

Sweig, who lives in Deerfield, Illinois, has worked for nearly thirty years as a management consultant, investment banker, and entrepreneur. Sweig advises businesses in improving their operations, reducing costs, and increasing revenue and profitability. He has advised companies on mergers and acquisitions, financial restructuring, and capital management strategies. He has also worked with start-up ventures, including serving as CEO and COO. In 2013, Sweig formed Carcharadon, LLC, through which he performs his consulting work.

Ascend, a Delaware limited liability company with its principal place of business in Cambridge, Massachusetts, is a robotics business. Askey, a Massachusetts resident, formed Ascend in 2017.

Sweig learned of Askey, Robert Cohanim (another businessman associated with Ascend), and Ascend in 2017. Askey represented to Sweig that Ascend had been developing robotics technology for commercial painting, with the technology projected to cut labor costs by substituting highly efficient robots for human labor. Askey indicated that Ascend could complete the robotics development, but it needed Sweig's business, finance, and management expertise to build a business based on the technology. Askey told Sweig that Ascend was well-capitalized, well-known and respected in the early-stage venture capital financing community, and had access to capital sponsors to fund its commercial development. Askey also represented that Ascend planned to contribute its existing and future technology to the new entity for exclusive "field of use" purposes in commercial construction marketplaces. Case No. 21 C 2890

---

[1] The Court takes the facts in the background section from Plaintiffs' complaints and exhibits attached thereto and presumes them to be true for the purpose of resolving Defendants' motions to dismiss. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013). Although the Court normally cannot consider extrinsic evidence without converting a motion to dismiss into one for summary judgment, *Jackson v. Curry*, 888 F.3d 259, 263 (7th Cir. 2018), the Court may consider "documents that are central to the complaint and are referred to in it" in ruling on a motion to dismiss, *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

("Ascend Action"), Doc. No. 1 ¶ 16. Sweig advised Askey that Ascend would have to make its intellectual property ("IP") and technology freely available to the new entity through an arms-length, perpetual royalty-free license agreement in order to attract investors to the new entity. Askey agreed that Ascend would provide such a license. Askey also indicated that the new entity's robot prototype would be ready for testing by August 2018.

Cohanim, Askey, and Ascend invited Sweig, working through Carcharadon, to join them in developing the new entity—which Askey formed and named Aryze, LLC—as a consultant. They anticipated that Sweig would develop a business plan for Aryze, bring investment into Aryze, and help attract an executive team. Sweig executed two written agreements in December 2017 and June 2018 to memorialize the consulting arrangement. Carcharadon, Askey, Cohanim, and Phoenix Construction, LLC ("Phoenix") signed the December 2017 Agreement . Phoenix, Aryze's predecessor-in-interest, was never formed. Shortly after the parties executed the December 2017 Agreement, Aryze assumed all of Phoenix's obligations and rights under the agreement. Under the Agreement, Carcharadon and Sweig received a significant minority equity interest in Aryze, along with voting rights, and Ascend, as consideration for granting an exclusive, perpetual royalty-free IP license agreement, also became an equity voting member. This division of equity gave Askey and Ascend voting control of Aryze.

In early 2018, Aryze and Ascend agreed to spin out Ascend's existing and future IP and technology, including applicable trademarks (the "Ascend IP"), to Aryze through an exclusive, perpetual, royalty-free IP license for use in the commercial painting industry and related markets (the "IP License Agreement"). From early 2018 through August 2019, Ascend repeatedly confirmed the terms of the IP License Agreement with Sweig and Carcharadon, representing that Ascend would execute a formal IP License Agreement memorializing this arrangement. In July

2018, Askey presented Sweig with a draft of the agreement prepared by Ascend's attorneys. Ascend's lawyers produced several additional drafts over the course of the next year.

In reliance on Ascend's representations to him, including about the IP License Agreement, in May 2018, Sweig terminated two other Carcharadon consulting agreements with Lego Systems and Alcentra Capital Corporation, which together paid him between $65,000 and $75,000 per month. Sweig also stopped soliciting new assignments through Carcharadon based on Askey's indication that Sweig would have a senior leadership position at Aryze as well as serve on its board of directors. Sweig also decided not to pursue partnership opportunities presented to him by A.T. Kearney and Alvarez & Marshal.

In 2018 and 2019, Ascend approved various Aryze materials, including confidential investor memoranda ("CIMs") that Sweig prepared for potential Aryze investors. The CIMs and other investor materials touted the IP License Agreement. For example, the fall 2018 CIM (prepared by Sweig) stated that "[r]esearch, [d]evelopment, and IP protection will be done by our partner Ascend in order to reduce complexity and avoid duplication of effort. Aryze has negotiated an exclusive, perpetual and royalty free agreement for the use of the technology in both core and adjacent markets." Ascend Action, Doc. No. 1 ¶ 38. An updated summer 2019 updated CIM repeated this information. Sweig also prepared an eighteen-page management presentation for Aryze, which stated that "Aryze has an exclusive, perpetual and royalty free agreement to utilize the portfolio of Ascend's technologies in connection with all Aryze solutions." *Id*. ¶ 40.

Also during 2018 and 2019, Sweig contacted potential investors and customers, including venture capital and construction companies. In April 2019, Sweig initiated serious discussions with Saint-Gobain, a global building products and materials company, about investing in Aryze.

On April 25, 2019, Sweig and Askey met with high level executives from Saint-Gobain. During the meeting, Askey represented that Ascend had granted Aryze the exclusive license to use its IP as set forth in the IP License Agreement. In early May 2019, Saint-Gobain reported an interest in making an investment in Aryze as its lead, strategic investor. By August 2019, Saint-Gobain had agreed on a written term sheet with Sweig on Aryze's behalf, pending the fully executed License IP Agreement.

Sweig also developed relationships with representatives of WeWork Companies, Inc., one of the largest commercial landlords. In late April 2019, Sweig reported to WeWork that the first preliminary field trial for the Aryze robot delivered successful results. By August 2019, Aryze had successfully completed the first of a two-phase pilot. Based on those results, WeWork was seriously considering creating a binding, strategic relationship as an Aryze customer.

Sweig also undertook work outside the scope of the consulting agreements for Ascend's benefit, using his professional network to help Ascend develop applications for other products, such as cold storage/material handling, and leveraging Ascend's artificial intelligence engine in other platforms. Ascend never compensated Sweig for this additional work.

Around August 2019, Askey confirmed in writing that Sweig had a 17.5% equity interest in Aryze, with Ascend having a 21.2% interest and Askey individually having a 22.8% interest. Although the Agreement reserved 30% of the membership units for a future employee pool, only Askey, Ascend, and Sweig had voting rights. This meant that Askey and Ascend had over 50% of Aryze's voting interests and thus controlled Aryze. Askey indicated that Ascend's goal was to support Aryze's growth and see Ascend obtain an investment return of at least $120 million.

6

Using Ascend's projections, then, Sweig's equity investment should have been worth $102 million had Ascend followed through with the IP License Agreement.

On August 27, 2019, Askey sent Sweig a further draft of the IP License Agreement. Askey represented that the changes involved "housekeeping" matters. Ascend Action, Doc. No. 1 ¶ 75. But the August 27 draft excluded the perpetual, irrevocable, royalty-free IP license as had previously been discussed and included in prior drafts. Thus, in early September 2019, Sweig told Askey that, as Aryze's CEO and as a fiduciary, he would not sign the latest IP License Agreement or present it to financing partners, stating that it was not commercially reasonable or an arms-length transaction. Instead, in the opinion of Sweig, Carcharadon, Aryze's lawyers, and its advisory board, the latest draft of the IP License Agreement would likely permanently impair Aryze and make it unfinanceable. On September 10, 2019, Sweig sent an email to Ascend's attorneys and others, representing that the current draft "seem[s] to be incongruous if not completely inconsistent with the business plan that has been circulated to investors for well over a year . . . a business plan signed off on by [Askey] and Ascend in the first half of 2018." *Id.* ¶ 82. On September 15, 2019, Askey provided Sweig and Aryze's counsel with a further revised draft of the IP License Agreement prepared by Ascend's attorneys, which reflected that the grant of an IP license to Aryze was not perpetual, irrevocable, unconditional, or royalty-free and did not give Aryze any rights to future IP developed by Ascend. During a September 17, 2019, conference call with Askey, Ascend representatives, and Sweig, Askey incorrectly represented that the September 15 IP License Agreement draft aligned with the business plan Sweig had prepared. During this call, Askey made clear Ascend's intention to seize for its own benefit the work Sweig had done on Aryze's behalf, ultimately through a different company, Ascend Build. On a separate call that same day, Askey terminated

7

Sweig and Carcharadon. In a follow-up email on September 19, Askey attached a letter, which

he signed as an Aryze manager, confirming the termination of Sweig's agreements with Aryze.

Askey stated:

> While I will not go into all the details and reasons here, the manner
> in which you have provided services to Aryze over the course of
> time, and especially over the past month, has led me to this
> decision. Most recently, in our call on the evening of September
> 17 with co-founders Ricky and Amy in which we discussed the
> upcoming fundraising proposal to Saint-Gobain, you indicated that
> if Saint-Gobain asked you in our upcoming meeting whether you
> agreed with the proposed license agreement that Aryze planned to
> present, you would state that you did not. This reinforced to
> Ricky, Amy, and me that your overall vision for the future of
> Aryze is not aligned [with] the collective vision of the founders.
> While you have provided important services over the years as an
> independent contractor and consultant, in my opinion you simply
> have not demonstrated the temperament that I want and that I feel
> Aryze needs in a CEO or in an executive-level role in the
> Company.

Ascend Action, Doc. No. 1-17 at 2. In the same letter, Askey also denied that Sweig had any

equity interest in Aryze. This denial also ignored the December 2018 Amendment to the

December 2017 Agreement which confirmed Sweig's equity interest in Aryze.

Shortly after Askey terminated Sweig, Aryze ceased operations. In October 2019, Askey

formed Ascend Build, affiliated with Ascend.

Sweig and Carcharadon are currently engaged in arbitration proceedings against Askey,

in his individual capacity, and Aryze for breach of contract, fraud, and other business torts

pursuant to the arbitration provisions in the consulting agreements. Although Sweig and

Carcharadon had also asserted claims against Ascend in the arbitration proceeding, a federal

district court in Massachusetts ruled that, as a non-signatory to the agreements, Ascend was not

bound to arbitrate Sweig and Carcharadon's claims against it.

On May 28, 2021, Plaintiffs filed suit in this Court against Ascend Robotics ("Ascend Action," Case No. 21 C 2890), alleging fraud, promissory fraud, negligent misrepresentation, equitable estoppel, breach of fiduciary duty, tortious interference with contract and business expectancy, promissory estoppel, and quantum meruit. On December 23, 2021, Plaintiffs filed a similar suit against David Askey ("Askey Action," Case No. 21 C 6841), which was consolidated with the Ascend Action. The Askey Action concerns the same events and consulting agreements as the Ascend Action, and asserts that Askey, individually and on behalf of Ascend, made the alleged false representations and that Askey wholly owned and controlled Ascend. The Askey Action alleges fraud, promissory fraud, negligent misrepresentation, equitable estoppel, breach of fiduciary duty, and promissory estoppel. The Askey Action does not allege tortious interference with contract and business expectancy or quantum meruit.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(2) challenges the Court's jurisdiction over a party. Fed. R. Civ. P. 12(b)(2). When a defendant raises a Rule 12(b)(2) challenge, "the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 392 (7th Cir. 2020) (citation omitted). If the Court rules on the Rule 12(b)(2) motion without an evidentiary hearing, the plaintiff need only establish a *prima facie* case of personal jurisdiction. *Id.* at 392–93; *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014). In resolving a Rule 12(b)(2) motion, the Court "accept[s] as true all well-pleaded facts alleged in the complaint," *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012), and "reads the complaint liberally with every inference drawn in favor of [the] plaintiff," *GCIU-Emp. Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1020 n.1 (7th Cir. 2009). However, if the defendant submits "evidence opposing the district court's exercise of personal jurisdiction, the plaintiff[ ] must

similarly submit affirmative evidence supporting the court's exercise of jurisdiction." *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019). The Court "accept[s] as true any facts contained in the defendant's affidavits that remain unrefuted by the plaintiff," *GCIU-Emp. Ret. Fund*, 565 F.3d at 1020 n.1, but resolves "any factual disputes in the [parties'] affidavits in favor of the plaintiff," *Felland*, 682 F.3d at 672.

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "This ordinarily requires describing the 'who, what, when, where, and how' of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011) (citation omitted). Rule 9(b) does not govern only claims of fraud; it applies to all allegations and averments of fraud. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 446–47 (7th Cir. 2011); *Borsellino v. Goldman Sachs Grp., Inc.*,

10

477 F.3d 502, 507 (7th Cir. 2007). "A claim that 'sounds in fraud'—in other words, one that is premised upon a course of fraudulent conduct—can implicate Rule 9(b)'s heightened pleading requirements." *Borsellino*, 477 F.3d at 507.

## ANALYSIS

### I.   Personal Jurisdiction

Ascend moves to dismiss Plaintiffs' claims against it pursuant to Rule 12(b)(2), arguing that the Court lacks jurisdiction over the Delaware LLC. In diversity cases, the Court may exercise personal jurisdiction over a defendant only if personal jurisdiction would be proper in an Illinois court. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). Illinois allows for personal jurisdiction to the full extent authorized by the Illinois and United States Constitutions. *KM Enters., Inc. v. Glob. Traffic Techs., Inc.*, 725 F.3d 718, 732 (7th Cir. 2013). Although there may be theoretical differences between the federal and Illinois constitutional standards, the Seventh Circuit has observed that "no Illinois case has provided a definitive explanation" of these differences. *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019). Moreover, both constitutional standards essentially focus on whether exercising jurisdiction over a defendant is fair and reasonable. *See KM Enters.*, 725 F.3d at 732. Thus, a single inquiry into whether the United States Constitution permits jurisdiction suffices. *See, e.g.*, *Curry*, 949 F.3d at 393 (citation omitted); *Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 756–57 (7th Cir. 2010); *C.H. Johnson Consulting, Inc. v. Roosevelt Rds. Naval Station Lands & Facilities Redevelopment Auth.*, No. 1:12-cv-08759, 2013 WL 5926062, at *2–3 (N.D. Ill. Nov. 5, 2013); *see also Wesly v. Nat'l Hemophilia Found.*, 2020 IL App (3d) 170569, ¶ 16 ("[I]t is generally true that, when federal due process concerns regarding personal jurisdiction are satisfied, so are Illinois due process concerns." (alteration in original) (citation omitted)). Jurisdiction is proper under the

Due Process Clause of the United States Constitution if the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Millikin v. Meyer*, 311 U.S. 457, 463 (1940)).  Minimum contacts exist where "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *Brook v. McCormley*, 873 F.3d 549, 552 (7th Cir. 2017).

Personal jurisdiction comes in two forms: general and specific.  *See Daimler AG v. Bauman*, 571 U.S. 117, 126–28 (2014); *Lexington Ins. Co. v. Hotai Ins. Co.*, 938 F.3d 874, 878 (7th Cir. 2019).  Plaintiffs do not contend that the Court has general jurisdiction over Ascend, so the Court limits its analysis accordingly.[2]  Specific jurisdiction arises "when the defendant purposefully directs its activities at the forum state and the alleged injury arises out of those activities." *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Hous. Metroplex, P.A.*, 623 F.3d 440, 444 (7th Cir. 2010); *see also Abelesz v. OTP Bank*, 692 F.3d 638, 654 (7th Cir. 2012) ("Specific jurisdiction is jurisdiction over a specific claim based on the defendant's contacts with the forum that gave rise to or are closely connected to the claim itself.").  For purposes of specific jurisdiction, "[t]he relevant contacts are those that center on the relations among the defendant, the forum, and the litigation." *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800–01 (7th Cir. 2014).  The Court thus considers whether Ascend engaged in: "(1) intentional conduct (or 'intentional and allegedly tortious' conduct); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the

---

[2] Because Plaintiffs do not argue that the Court has general jurisdiction over Ascend, Ascend's focus on the fact that it was not formed in, does not maintain a principal place of business in, and has no employees or customers in Illinois is misplaced.

effects would be felt—that is, the plaintiff would be injured—in the forum state." *Tamburo v. Dworkin*, 601 F.3d 693, 702–03 (7th Cir. 2010).

### A.      Conduct Purposefully Directed at Illinois

Plaintiffs argue that Ascend, acting through Askey, made various misrepresentations and acted in bad faith to convince Plaintiffs to build a successful new business venture, after which Ascend and Askey terminated their dealings with Plaintiffs while taking for themselves the business opportunities that Plaintiffs created. Plaintiffs maintain that Ascend, again through Askey, sought out Plaintiffs in Illinois and knew that the effects of its misrepresentations and tortious actions would be felt in Illinois. Ascend, on the other hand, argues that it played no part in the alleged fraudulent conduct and so cannot be found to have purposefully directed any activities that caused Plaintiffs' injuries in Illinois. It contends that Askey's actions cannot be attributed to Ascend, despite the fact that Askey controls and owns Ascend, because Ascend was not a party to the contractual agreements with Plaintiffs, Askey, and Aryze.

Ascend asks the Court to rely on a Massachusetts federal district court's decision in related litigation to find that Plaintiffs cannot attribute Askey's actions to Ascend. *See Ascend Robotics LLC v. Carcharadon, LLC*, No. 1:20-cv-10934, 2021 WL 413639 (D. Mass. Feb. 5, 2021). In that case, Ascend asked the court to find that the arbitration provisions within the agreements between Askey, Cohanim, Aryze (and its predecessor), and Carcharadon did not bind Ascend to arbitrate Plaintiffs' claims against it. The court recognized that, because Ascend was not a party to those agreements and the arbitration clauses did not specify that they included disputes with Ascend, Plaintiffs could not compel Ascend to participate in the arbitration proceedings they had commenced against Aryze and Askey. *Id.* at *6–7. But the court did not conclusively rule out Plaintiffs pursuing their claims against Ascend in a different forum or

otherwise make any findings that would bind this Court concerning whether the Court could attribute Askey's actions to Ascend. *See id.* at *10 (noting that Plaintiffs may have to resolve their disputes in more than one forum).

Apparently in recognition of the Massachusetts ruling, Plaintiffs do not argue here that Askey entered the Agreements on behalf of Ascend and do not bring any claims based on the alleged breach of those Agreements by Ascend. Instead, they maintain that Askey's representations on Ascend's behalf induced Plaintiffs to enter the Agreements and that Ascend, through Askey, took subsequent actions to induce Plaintiffs to continue performing under those Agreements despite Ascend's intentions not to execute the IP License Agreement. Indeed, at least one email communication that Plaintiffs attached to their complaints reflects that Askey communicated with Plaintiffs from his Ascend email address, lending plausibility to the allegations that Askey made representations on behalf of Ascend. *See* Ascend Action, Doc. No. 1-6 at 2.

And the Agreements do not, as Ascend argues, "flatly contradict[ ]" these allegations or somehow preclude Plaintiffs from pursuing Ascend based on Askey's statements. Ascend Action, Doc. No. 30 at 8. Although Ascend points to the Agreements' integration clauses to suggest otherwise, the integration clauses have no effect on Plaintiffs' fraud claims. *See Vigortone AG Prods., Inc. v. PM AG Prods., Inc.*, 316 F.3d 641, 644 (7th Cir. 2002) ("By virtue of the parol evidence rule, an integration clause prevents a party to a contract from basing a claim of breach of contract on agreements or understandings, whether oral or written, that the parties had reached during the negotiations that eventuated in the signing of a contract but that they had not written into the contract itself. But fraud is a tort, and the parol evidence rule is not a doctrine of tort law and so an integration clause does not bar a claim of fraud based on

14

statements not contained in the contract."). Because Ascend has not provided the Court with information that refutes Plaintiffs' allegations that Askey acted on behalf of Ascend with respect to the alleged tortious conduct, the Court must continue to accept those allegations as true. *Curry*, 949 F.3d at 392–93. And based on those allegations, the Court can easily conclude that Plaintiffs have set forth a *prima facie* case that Ascend is subject to personal jurisdiction in Illinois, by contending that Ascend purposefully directed material misrepresentations to Plaintiffs in Illinois and knew that Plaintiffs would suffer injury in Illinois. *See Tamburo*, 601 F.3d at 701; *Aon Corp. v. Cabezas*, No. 15-cv-04980, 2018 WL 1184728, at *6 (N.D. Ill. Mar. 7, 2018) (allegations that plaintiff purposefully directed misrepresentations at Illinois parent company sufficient).

### B. Traditional Notions of Fair Play and Substantial Justice

The final inquiry in the Court's specific jurisdiction analysis is whether the exercise of personal jurisdiction over Ascend would offend traditional notions of fair play and substantial justice. *See Int'l Shoe*, 326 U.S. at 316; *Felland*, 682 F.3d at 677. In this analysis, the Court evaluates "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Felland*, 682 F.3d at 677 (citation omitted). "[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, [it] must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* (citation omitted). Ascend has made no such showing, and the Court sees no unfairness in allowing this suit to proceed in Illinois because Illinois has "a strong interest in providing a forum for its residents,

15

including [Plaintiffs], to seek redress for harms suffered within the state by an out-of-state actor."
*Curry*, 949 F.3d 385 at 402; *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 432 (7th Cir. 2010)
(noting "Illinois's significant interest in providing a forum for its residents to seek relief when
they suffer harm in Illinois from a wrong that occurred at least in part in Illinois"). Thus, the
Court denies Ascend's motion to dismiss Plaintiffs' claims against it pursuant to Rule 12(b)(2).

## II.     Substantive Claims

Moving to the substance of Plaintiffs' claims, Defendants submitted separate 12(b)(6)
motions to dismiss in the two actions, but where Plaintiffs assert the same counts against each
Defendant, Defendants' briefs present nearly identical arguments. To the extent Defendants'
arguments diverge, the Court has noted it below. Otherwise, its analysis applies to both actions
and both Defendants.

### A.     Statements About the Future/Promissory Fraud Claim

Defendants first argue that the Court should dismiss Plaintiffs' fraud, negligent
misrepresentation, and equitable estoppel claims because the alleged misrepresentations relate
only to non-actionable statements about the future. These three claims have somewhat similar
elements, each requiring a misrepresentation of material fact. To state a fraud claim, Plaintiffs
must allege that: (1) Defendants made a false statement or omission of material fact,
(2) Defendants knew of or believed in its falsity, (3) Defendants intended to induce Plaintiffs to
act, (4) Plaintiffs acted in reliance on the truth of Defendants' statement, and (5) damages
resulted from Plaintiffs' reliance. *Weidner v. Karlin*, 402 Ill. App. 3d 1084, 1087 (2010). To
state a claim for negligent misrepresentation, Plaintiffs must allege: "(1) a false statement of
material fact; (2) carelessness or negligence in ascertaining the truth of the statement by the party
making it; (3) an intention to induce the other party to act; (4) action by the other party in

reliance on the truth of the statement; (5) damage to the other party resulting from such reliance; and (6) a duty on the party making the statement to communicate accurate information." *Tricontinental Indus., Ltd. v. Pricewaterhouse Coopers, LLP*, 475 F.3d 824, 833–34 (7th Cir. 2007) (quoting *First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 218 Ill. 2d 326, 334–35). To establish equitable estoppel, the party claiming estoppel must allege that: "(1) the other party misrepresented or concealed material facts; (2) the other party knew at the time the representations were made that the representations were untrue; (3) the party claiming estoppel did not know that the representations were untrue when they were made and when they were acted upon; (4) the other party intended or reasonably expected the representations to be acted upon by the party claiming estoppel or by the public generally; (5) the party claiming estoppel reasonably relied upon the representations in good faith to his or her detriment; and (6) the party claiming estoppel has been prejudiced by his or her reliance on the representations." *In re Scarlett Z.-D.*, 2015 IL 117904, ¶ 25.

Under Illinois law, "alleged misrepresentations must be statements of present or preexisting facts, and not statements of future intent or conduct." *Ault v. C.C. Servs., Inc.*, 232 Ill. App. 3d 269, 271 (1992) (fraud claim); *see also In re Scarlett Z.-D.*, 2015 IL 117904, ¶ 27 (equitable estoppel claim); *Avon Hardware Co. v. Ace Hardware Corp.*, 2013 IL App (1st) 130750, ¶ 17 (fraud and negligent misrepresentation claims). Defendants point to Plaintiffs' allegations that Askey promised on Ascend's behalf that Ascend would contribute its technology and would implement the IP License Agreement, arguing that these allegations only indicate nonactionable statements about Ascend's future conduct. *See, e.g.*, Ascend Action, Doc. No. 1 ¶¶ 16, 77. Plaintiffs effectively concede this by arguing that they nonetheless can pursue these alleged misrepresentations about Ascend's future conduct as part of a promissory fraud claim.

Thus, the Court agrees that statements about Ascend's intentions to contribute its technology to Aryze and to implement the IP License Agreement constitute non-actionable statements about the future and so cannot form the basis of Plaintiffs' fraud, negligent misrepresentation, or equitable estoppel claims. *See People ex rel. Peters v. Murphy-Knight*, 248 Ill. App. 3d 382, 387 (1993) ("[T]he alleged misrepresentation must be one of fact and not an expression of an opinion. Statements regarding future events are considered opinions, not statements of fact." (citations omitted)).

To state a claim for promissory fraud, in addition to the elements of fraud discussed above, Plaintiffs must allege that Defendants made the misrepresentations "as part of a scheme to defraud." *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 413 (7th Cir. 2009); *see also Desnick v. Am. Broad. Cos.*, 44 F.3d 1345, 1354 (7th Cir. 1995) ("[P]romissory fraud is actionable only if it either is particularly egregious or . . . is embedded in a larger pattern of deceptions or enticements that reasonably induces reliance and against which the law ought to provide a remedy."). Defendants argue that Plaintiffs have not met the high bar required to suggest promissory fraud because although they have alleged a promise made without the intent to perform it, they have failed to include any factual allegations to support that Defendants made such promises pursuant to a scheme to defraud. *See Bower v. Jones*, 978 F.2d 1004, 1012 (7th Cir. 1992) ("[T]he burden on a plaintiff claiming promissory fraud is deliberately high. 'In order to survive the pleading stage, a claimant must be able to point to specific, objective manifestations of fraudulent intent—a scheme or device.'" (quoting *Hollymatic Corp. v. Holly Sys., Inc.*, 620 F. Supp. 1366, 1369 (N.D. Ill. 1985))). Plaintiffs respond that Defendants repeatedly promised to finalize the IP License Agreement but had no intention of doing so. But the mere repetition of the same alleged misrepresentation does not amount to a scheme to

defraud. *See Sols. Team, Inc. v. Oak St. Health, MSO, LLC*, No. 17-cv-1879, 2019 WL 462481, at *6 (N.D. Ill. Feb. 6, 2019) ("Plaintiffs cannot establish a scheme to defraud merely by alleging that defendants made the same representations multiple times."); *Nat'l Painting, Inc. v. PPG Architectural Finishes, Inc.*, No. 14 C 8054, 2015 WL 1593008, at *4 (N.D. Ill. Apr. 1, 2015) (repetition of fraudulent misrepresentations, without more, does not adequately allege a scheme to defraud). Nor have Plaintiffs alleged that Defendants "engaged in other acts of trickery compounding the initial misrepresentations" or "that they perpetrate[d] this type of fraud as a regular practice, or on any grand scale" that would allow the Court to infer a scheme to defraud. *LeDonne v. Axa Equitable Life Ins. Co.*, 411 F. Supp. 2d 957, 960–62 (N.D. Ill. 2006), *superseded on other grounds by statute*, 735 Ill. Comp. Stat. 5/2-2201. Finally, the fact that Ascend ultimately did not enter into the IP License Agreement does not on its own demonstrate that it and/or Askey never intended to keep the promise to do so. *See BPI Energy Holdings, Inc. v. IEC (Montgomery), LLC*, 664 F.3d 131, 137 (7th Cir. 2011) ("[T]he fact that a party breaks a contract doesn't show that its promise to perform it had been fraudulent when made—that is, that the party had never intended to perform it."). Therefore, because Plaintiffs have not sufficiently alleged the required scheme to defraud, the Court must dismiss their promissory fraud claims.

### B. Fraud and Negligent Misrepresentation Claims

In response to Defendants' argument that Plaintiffs have only pleaded non-actionable fraud and negligent misrepresentation claims based on statements about the future, Plaintiffs contend that the complaints also allege actionable misrepresentations, namely, that Defendants confirmed that Aryze had negotiated an exclusive, perpetual, and royalty free IP license from Ascend for all of Ascend's current and future IP. Defendants first maintain that Sweig himself, and not Askey or Ascend, made these representations, meaning Plaintiffs cannot recover for

them.  *See Abazari v. Rosalind Franklin Univ. of Med. & Sci.*, 2015 IL App (2d) 140952, ¶ 14

(specifying that the defendant must have made the false statement at issue).  The complaints

indicate that Plaintiffs prepared investor materials that included representations that Aryze had

negotiated the terms of an IP license agreement.  *See, e.g.*, Ascend Action, Doc. No. 1 ¶¶ 35–43;

Askey Action, Doc. No. 1 ¶¶ 35–43.  The complaints further allege that Ascend, through Askey,

approved of these materials.  Ascend Action, Doc. No. 1 ¶¶ 39–41.  Initially, the investor

materials only represent that Askey has negotiated an agreement for IP materials, making clear

that the representation comes from Aryze, not Ascend.  Moreover, Askey's general approval of

materials drafted by Plaintiffs does not allow for the reasonable inference that Ascend adopted

these statements, and Plaintiffs do not point to any caselaw suggesting they can transform their

own statements into ones made by Defendants for purposes of a fraud or negligent

misrepresentation claim.  Thus, Plaintiffs cannot recover for any representations about the fact

that Askey and Ascend had negotiated an IP licensing agreement that Plaintiffs themselves made,

on their own behalf or on behalf of Aryze.

Next, Defendants contend that Plaintiffs cannot recover for any representations made in

the draft IP License Agreements that Ascend's counsel prepared, arguing that Plaintiffs have not

sufficiently pleaded that they reasonably relied on such draft contract language.  "In determining

whether reliance was reasonable, all of the facts which plaintiff had actual knowledge of, as well

as all of those it might have learned if it had used ordinary prudence, must be taken into

account."  *Loggerhead Tools, LLC v. Sears Holdings Corp.*, No. 12-CV-9033, 2016 WL

5111573, at *4 (N.D. Ill. Sept. 20, 2016), *aff'd*, 784 F. App'x 785 (Fed. Cir. 2019) (quoting

*Teamsters Local 282 Pension Tr. Fund v. Angelos*, 839 F.2d 366, 370 (7th Cir. 1988)) (internal

quotation marks omitted).  Defendants argue that Sweig is a sophisticated businessman,

represented by counsel, who pushed Ascend and Aryze to finalize the license because he understood that it was a draft and not yet binding. "Where the reduction of an agreement to writing and its formal execution is viewed by the parties as a condition precedent to the vesting of rights and duties, there can be no contract until then, even if the actual terms have been agreed upon." *Brunette v. Vulcan Materials Co.*, 119 Ill. App. 2d 390, 395 (1970); *Magallanes Inv., Inc. v. Circuit Sys., Inc.*, No. 90 C 6537, 1991 WL 30108, at *4 (N.D. Ill. Mar. 4, 1991) (dismissing claim based on contract that was never finalized, although some terms agreed). The complaints make clear that the parties to the license (Ascend and Aryze) never executed a final version, and that Askey sent Sweig the various drafts. *See, e.g.*, Ascend Action, Doc. No. 1 ¶¶ 33–34 (July 2018 Draft License Agreement; June 2019 Draft); *id.* ¶¶ 75–76 (August 2019 Draft). The Court agrees that Sweig's reliance on the draft terms of the agreements was not reasonable. As a result, Plaintiffs cannot recover for alleged falsehoods in the draft IP Licensing Agreements.[3]

Defendants seek dismissal of Plaintiffs' negligent misrepresentation claims on the additional basis that, when a plaintiff seeks only economic damages, he must plead that the defendant is in the business of supplying information for the guidance of others in business transactions, and that Plaintiffs cannot allege that against Ascend or Askey. As discussed above, to state a claim for negligent misrepresentation, Plaintiffs must allege "a duty on the party making the [false] statement to communicate accurate information." *Tricontinental Indus.*, 475 F.3d at 833–34. If a plaintiff seeks only economic damages, the Illinois Supreme Court has explained that "the duty to avoid negligently conveying false information is imposed only if the party accused of misrepresentation 'is in the business of supplying information for the guidance

---

[3] Defendants also argue that Plaintiffs insufficiently pleaded their fraud claims under Rule 9(b)'s particularity requirements. Because the Court dismisses on Defendants' specific arguments, it need not take up this more general one.

of others in their business transactions.'" *Dino Publ'g LLC v. Maritimo Mktg. Ams., Inc.*, No. 19
C 1921, 2019 WL 3857875, at *2 (N.D. Ill. Aug. 16, 2019) (quoting *First Midwest Bank, N.A. v.
Stewart Title Guar. Co.*, 218 Ill. 2d 326, 335 (2006)). Otherwise, the *Moorman* or economic loss
rule bars a plaintiff's attempt to recover purely economic losses through tort. *First Midwest*, 218
Ill. 2d at 337–42 (explaining *Moorman* doctrine and its two other inapplicable exceptions).

In response, Plaintiffs argue that Defendants, as controlling shareholders of Arzye, had a
fiduciary duty to them and that this suffices for the duty element of negligent misrepresentation.
However, Plaintiffs supply no caselaw to contradict the clear rule from the Illinois Supreme
Court that a negligent misrepresentation claim seeking only economic losses requires a specific
kind of business-information-provider related duty.[4] Plaintiffs seek only economic losses, and
they do not plead that Ascend or Askey were "in the business of supplying information for the
guidance of others in their business transactions." *Id.* at 335. Ascend is a robotics business, with
Askey as its majority owner and controlling member. Unlike an art dealer providing provenance
information to a potential buyer, Ascend and Askey did not engage in a kind of business that
provided information for others to rely on in their own business transactions. *See Piper v.
DPFA, Inc.*, No. 09 CV 1220, 2010 WL 2836814, at *8 (N.D. Ill. July 20, 2010) (finding
plaintiff art dealer "may very well have owed defendant a duty to disclose" accurate information

---

[4] Plaintiffs cite a recent district court case, *Wert v. Cohn*, for their proposition that a generalized fiduciary
duty suffices. No. 17 C 219, 2017 WL 3838098 (N.D. Ill. Sept. 1, 2017). In *Wert*, shareholders sued a
company's board members for allegedly concealing evidence showing corporate fraud and
mismanagement. *Id.* at *1. First, the court found that the board members owed a duty to the
shareholders. *Id.* at *8 Then, without any consideration of the *Moorman* doctrine, the court, in one
sentence, determined that duty sufficed to state a claim for negligent misrepresentation. *Id.* at *9 ("As
previously noted, where a fiduciary relationship exists between a plaintiff and a defendant, the defendant
is under a duty to disclose all material facts."). The Court does not find this case persuasive when set
against the Illinois Supreme Court's clear directive.

about artwork). So, the Court dismisses Plaintiffs' negligent misrepresentation claims against Defendants.

### C. Promissory Estoppel and Quantum Meruit Claims

#### 1. Promissory Estoppel

Defendants seek dismissal of Plaintiffs' promissory estoppel claims on the basis that this cause of action is unavailable when there is an enforceable contract. Specifically, Defendants argue that Plaintiffs cannot show reasonable reliance, an element of promissory estoppel, on any oral promises because the consulting agreements (drafted by Plaintiffs) contain integration clauses. To state a claim for promissory estoppel, Plaintiffs must allege that: (1) Askey and Ascend (through Askey) made an unambiguous promise to Sweig; (2) Sweig reasonably and justifiably relied on the promise; (3) Sweig's reliance was expected and foreseeable by Defendants; and (4) Sweig relied on the promise to his detriment. *Quake Constr., Inc. v. Am. Airlines, Inc*., 141 Ill. 2d 281, 310 (1990); *Newton Tractor Sales, Inc. v. Kubota Tractor Corp*., 233 Ill. 2d 46, 51 (2009). "Promissory estoppel is meant for cases in which a promise, not being supported by consideration, would be unenforceable under conventional principles of contract law. When there is an express contract governing the relationship out of which the promise emerged, and no issue of consideration, there is no gap in the remedial system for promissory estoppel to fill." *All-Tech Telecom, Inc. v. Amway Corp*., 174 F.3d 862, 869 (7th Cir. 1999); *see also McVickers McCook, LLC v. Wal-Mart Stores, Inc*., No. 09 C 7523, 2010 WL 3283044, at *6 (N.D. Ill. Aug. 12, 2010) ("promissory estoppel is not meant to be a substitute for a breach of contract claim"); *Matthews v. Chi. Transit Auth*., 2016 IL 117638, ¶ 92 ("Application of promissory estoppel is proper only in the absence of an express agreement."); *Olson v. Hunter Point Homes, LLC*, 2012 IL App (5th) 100506, ¶ 13 (same).

23

First, Plaintiffs argue that the integration clauses in the consulting agreements between them and Aryze are irrelevant because Ascend was not a party to those agreements. Even when a contract controls the transaction at issue, a court may allow a promissory estoppel claim against a defendant who was not a party to that contract. *See RehabCare Grp. E., Inc. v. SAK Mgmt. Servs., LLC*, No. 09 C 4523, 2010 WL 3307084, at *2 (N.D. Ill. Aug. 18, 2010) (refusing to dismiss promissory estoppel claim against defendant who was not a party to the written contract, even though that contract controlled the transaction at issue). Defendants counter that Sweig purposefully excluded Ascend from the agreements, in particular the June 2018 agreement amendments, and therefore the agreements should still foreclose a promissory estoppel claim against Ascend. However, Defendants provide no cases to support this circular argument that a plaintiff cannot pursue promissory estoppel because it has *not* contracted with a defendant. Thus, because Ascend was not a party to the consulting contracts, the Court will not dismiss Plaintiffs' promissory estoppel claim against Ascend solely on that basis.

Plaintiffs further argue that the Aryze-Askey-Sweig consulting agreements concern a different subject matter from the alleged promises about the draft IP Licensing Agreement, and therefore, the express contract exclusion should not bar their promissory estoppel claim. Illinois courts compare the subject matter of the contract, including the consideration and performance, to the alleged promise and plaintiff's uncompensated performance to determine whether a plaintiff can sustain a promissory estoppel claim. *See Canadian Pac. Ry. Co. v. Williams-Hayward Protective Coatings, Inc*., No. 02 C 8800, 2005 WL 782698, at *21 (N.D. Ill. Apr. 6, 2005) (applying Illinois law and finding promissory estoppel allegations "different in subject matter" from the parties' sales contract); *Janda v. U.S. Cellular Corp*., 2011 IL App (1st) 103552, ¶¶ 88–89 (refusing to bar promissory estoppel claim, despite employment contract,

explaining, "the performance giving rise to plaintiff's detrimental reliance in his promissory estoppel claim is not the same performance that supplied the consideration for the contract"). Here, the consulting agreements concerned Sweig's provision of professional services to Aryze, which included creating business connections as sources of funding and clients for the new venture. Aryze/Askey paid Sweig for his time. As for promissory estoppel, Plaintiffs allege that Defendants' promises about the favorable terms and finalization of the draft IP Licensing Agreement caused Sweig to forgo other employment, including canceling existing consulting contracts and passing up partnership offers. This is sufficiently distinct from the consulting agreement to survive at this stage. *See Fischer v. First Chi. Cap. Mkts., Inc.*, 195 F.3d 279, 284 (7th Cir. 1999) (consultant who continued to work after end of contract, on promise of additional annual fee, sufficiently pleaded detrimental reliance for promissory estoppel claim). The Court cannot say, as a matter of law, that Plaintiffs' promissory estoppel claim against Defendants fails on this basis.

Defendants also assert that Plaintiffs cannot have reasonably relied on Askey's alleged misrepresentations about the IP Licensing Agreement because, as late as March 2019, Sweig threatened to quit because that license had not been finalized. But as discussed above, the Court understands Plaintiffs' theory to be that, in reliance on the promise of the IP Licensing Agreement, Sweig devoted more of his time to Aryze and as a result, lost additional income opportunities. Finally, for the first time in reply, Defendants briefly mention that the statue of frauds bars this claim. The Court need not consider this undeveloped argument. *See Multi–Ad Servs., Inc. v. NLRB*, 255 F.3d 363, 370 (7th Cir. 2001) ("It is well-settled that parties may not raise new arguments or present new facts for the first time in reply."). For the foregoing reasons, the Court will not dismiss Plaintiffs' promissory estoppel claims against Defendants.

2.      **Quantum Meruit**

Defendant Ascend similarly seeks dismissal of Plaintiffs' quantum meruit claim on the basis that the consulting agreements preclude this quasi-contractual cause of action.  *See Installco Inc. v. Whiting Corp.*, 336 Ill. App. 3d 776, 781 (2002) ("Where services are rendered under an express contract, there can be no quasi-contractual recovery." (citation omitted) (internal quotation marks omitted)).  But again, the express contract must involve the same parties and concern the same subject matter as the equitable claim.  *Indus. Lift Truck Serv. Corp. v. Mitsubishi Int'l Corp.*, 104 Ill. App. 3d 357, 360 (1982) ("The general rule is that no quasi-contractual claim can arise when a contract exists between the parties concerning the same subject matter on which the quasi-contractual claim rests.").  And as the Court noted above, according to the complaints, Ascend was not a party to the consulting agreements, and therefore the Court will not dismiss the quantum meruit claim on that basis.

Plaintiffs also base their quantum meruit claims on work outside the Aryze-Askey-Sweig consulting agreements, i.e., providing Ascend advice and assistance to develop applications for other Ascend products.  Ascend Action, Doc. No. 1 ¶ 154.  Although Ascend argues that any such work was done to further Sweig's position under the consulting contract, the Court does not find this argument convincing because Ascend was not a party to that employment contract. Therefore, the case cited by Ascend, which barred a quantum meruit claim by a party to a contract who performed extra work, is not applicable.  *Indus. Lift Truck*, 104 Ill. App. 3d at 362 ("The contract defined the entire relationship of the parties with respect to its general subject matter-the sale and servicing of defendant's products.").  The Court thus denies Ascend's motion to dismiss Plaintiffs' quantum meruit claim.

### D. Fiduciary Duty Claims

Defendants seek dismissal of Plaintiffs' fiduciary duty claims, arguing that Defendants never had an equity interest in Aryze that would create a duty to Sweig, and that Plaintiffs fail to plead this claim, which is based on allegations of fraud, with the required particularity. Plaintiffs assert that both Defendants can be held liable for breach of fiduciary duty as a "control group" of majority shareholders.

"To state a claim for breach of fiduciary duty under Delaware law, a plaintiff must allege that a fiduciary duty existed and that the defendant breached that duty." *Cornielsen v. Infinium Cap. Mgmt., LLC*, 916 F.3d 589, 604 (7th Cir. 2019).[5] This claim is "subject to Rule 9(b)'s heightened pleading requirements [because it is] premised on allegations that the defendants knowingly misled Plaintiffs." *Id.* Plaintiffs allege that Defendants, using their voting control of Aryze, breached their duties to Plaintiffs by: (1) unilaterally changing Aryze's business model by making material changes to the draft IP Licensing Agreement, which rendered Aryze wholly dependent on Ascend and therefore unfinanceable; (2) seizing Aryze's business opportunity to benefit themselves and the newly created Ascend Build; and (3) causing Aryze to terminate Plaintiffs in bad faith and deprive Plaintiffs of their equity stake in Aryze. *See, e.g.*, Ascend Action, Doc. No. 1 ¶ 137.

As for whether Defendants had any duty in the first place, Plaintiffs argue that Ascend and Askey, collectively, had the majority voting interest (or "controlling interest") in Aryze, and so owed Plaintiffs, as minority shareholders, fiduciary duties. Under Delaware law, majority shareholders, or those that control the business affairs of a company, acquire fiduciary duties. *Kahn v. Lynch Commc'n Sys., Inc.*, 638 A.2d 1110, 1113–14 (Del. 1994) (citing *Ivanhoe*

---

[5] The parties agree, and the Court accepts for the purposes of this motion, that Delaware law applies to this claim.

*Partners v. Newmont Mining Corp.*, 535 A.2d 1334, 1344 (Del. 1987)); *accord Kennedy v. Venrock Assocs.*, 348 F.3d 584, 589 (7th Cir. 2003) ("They seek to fit their case into the familiar framework of a suit by a minority shareholder against a majority shareholder. The latter has a fiduciary obligation to the former." (citing *Kahn*)). However, "Delaware law treats actual stockholders and prospective stockholders quite differently. Most significantly, prospective stockholders are not owed fiduciary duties." *Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 407 (7th Cir. 2000) (citing *Anadarko Petroleum Corp. v. Panhandle E. Corp.*, 545 A.2d 1171, 1174–77 (Del. 1988)). "Fiduciary duties arise only after a stockholder comes into actual possession of stock, regardless of how certain the stockholder's future ownership was when the challenged transaction took place." *Id.*; *see also Simons v. Cogan*, 549 A.2d 300, 304 (Del. 1988) ("As this Court recently noted in *Anadarko* . . . a mere expectancy interest does not create a fiduciary relationship. Before a fiduciary duty arises, an existing property right or equitable interest supporting such a duty must exist. The obvious example is stock ownership.").

The key question therefore becomes whether Plaintiffs sufficiently allege the existence of actual, not prospective, equity interests in Aryze. Sometime after December 2017, Askey formed Aryze. There are no specific allegations about the ownership divisions or equity interests in Aryze when Askey founded Aryze, except the general assertion that Askey controlled Aryze. Plaintiffs plead that Ascend became an equity voting member of Aryze "as consideration for granting the exclusive, perpetual royalty-free IP license agreement," and that Plaintiffs received "a significant minority equity interest in Aryze along with voting rights" in consideration for their consulting work. Ascend Action, Doc. No. 1 ¶ 29. However, around August 2019, Sweig and Askey exchanged emails discussing the "Proposed Pre-Seed Allocation" of voting share units in Aryze. Ascend Action, Doc. No. 1-11 at 6. In addition to use of the term "proposed" to

describe the equity unit division, the email contains other language indicating that Askey and Sweig were discussing prospective terms. *Id.* at 4–5 ("Upon deal close . . . ."; "Aryze *will have* an exclusive license to the IP in the field of use." (emphasis added)). In this email exchange, Askey confirms an agreement to divide the shares between Askey, Ascend, Sweig, and a few others. This division would give Askey and Ascend "well in excess of 50% of Aryze's voting interests." *Id.* ¶¶ 66–70, 123, & 1-11. The complaints also make clear that the parties never finalized the draft IP Licensing Agreement.

Plaintiffs have not sufficiently pleaded that any of the parties had more than an expectancy interest in this stock allocation. As an initial matter, the crux of Plaintiffs' complaints is that Ascend and Arzye never finalized the IP Licensing Agreement or completed this deal. Therefore, Ascend had, at best, a prospective interest that never materialized. *See Montgomery*, 231 F.3d at 407 ("prospective stockholders are not owed fiduciary duties"); *accord Simons*, 549 A.2d at 303 (applying same reasoning to creditor's note, which, even though convertible to an equity interest in the company, "does not impart an equity element until conversion occurs"). And while the complaints use the present tense when referring to Sweig, Ascend, and Askey's equity interests, at the same time, Plaintiffs attach an email clearly referencing the stock allocation as part of Ascend and Aryze's future, unconsummated agreement.[6] Even if the Court accepted as true that Sweig already possessed his equity interest (in exchange for consulting work), it is not reasonable to infer that Askey and Ascend therefore also had their equity even though the IP license and ultimate deal were not finalized, much less that they held the majority shareholder status with its concomitant duties. Plaintiffs' allegations, taken as a whole, do not allow the Court to draw the reasonable inference that Plaintiffs

---

[6] Because the exhibit attached to the complaint contradicts the complaint, the exhibit controls. *Centers v. Centennial Mortg., Inc.*, 398 F.3d 930, 933 (7th Cir. 2005).

possessed actual equity interests in Aryze and thus, the Court dismisses Plaintiffs' breach of fiduciary duty claims.[7]

### E.     Tortious Interference with Contract and Business Expectancy Claims

#### 1.     Tortious Interference with Contract

Plaintiffs bring tortious interference with contract and tortious interference with business expectancy claims against Defendant Ascend only.  Ascend seeks dismissal of the interference with contract claim on the basis that Plaintiffs do not argue Ascend directed its alleged interference at a third party.  For tortious interference with contract, "a plaintiff must allege facts sufficient to establish: (1) a valid contract, (2) defendant's knowledge of the contract, (3) defendant's intentional and unjustified inducement of a breach of the contract, (4) a subsequent breach of contract caused by defendant's wrongful conduct, and (5) damages." *Webb v. Frawley*, 906 F.3d 569, 577 (7th Cir. 2018).  "Under Illinois law, liability for tortious interference may only be premised on acts immediately directed at a third party which cause that party to breach its contract with the plaintiff."  *George A. Fuller Co. v. Chi. Coll. of Osteopathic Med.*, 719 F.2d 1326, 1331 (7th Cir. 1983).

Plaintiffs allege that "Ascend Robotics, controlled by Askey, intentionally and without justification, colluded with Askey, individually and on Aryze's behalf, to cause [Askey] to breach" the Aryze-Askey-Sweig consulting agreements.  Ascend Action, Doc. No. 1 ¶ 142. Ascend argues that this alleged scheme does not qualify as tortious interference with contract because Ascend is working through Askey to interfere with Aryze (which is also, as pleaded, Askey)—i.e., there is no real third party here, just Askey wearing different hats.  Plaintiffs counter that Ascend targeted third party Aryze, inducing Aryze to terminate Sweig, and this

---

[7] Because the Court finds that Plaintiffs do not sufficiently allege duty, it need not address Defendants argument that Plaintiffs also fail to plead breach with sufficient particularity.

termination required Ascend's approval. *See id.* ¶ 91 ("Ascend Robotics – through Askey – approved Sweig's termination."); *id.* ¶ 95 ("Ascend approved Askey's termination letter."). But if Ascend (the defendant here) had to approve the termination as Plaintiffs allege, then it was not a true third party to the contract, and Plaintiffs' claim fails.[8] *Nation v. Am. Cap., Ltd.*, 682 F.3d 648, 652–53 (7th Cir. 2012) ("[Plaintiff] notes the many ways in which American Capital was enmeshed in Spring Air's affairs, arguing that 'American Capital WAS Spring Air.' To the extent that this is true, it defeats Nation's tortious-interference claim. It is settled law that a party cannot tortiously interfere with his own contract; the tortfeasor must be a third party to the contractual relationship." (citations omitted) (internal quotation marks omitted)); *see also Knickman v. Midland Risk Servs.-Ill., Inc.*, 298 Ill. App. 3d 1111, 1117 (1998) (no tortious interference by "alter ego" parent company that was a constructive party to employment contract).[9] The Court thus dismisses Plaintiffs' tortious interference with contract claim against Ascend.

### 2. Tortious Interference with Business Expectancy

Ascend also seeks dismissal of the business expectancy claim, arguing similarly that Plaintiffs do not identify the existence of a valid business expectancy with any third party. Ascend further argues that, to the extent the claim is that it interfered with Plaintiffs' business relationship with Aryze, that relationship came to fruition in the consulting agreements, and to

---

[8] The Court makes no finding as to whether Ascend was a constructive party to the consulting agreements; rather, it bases this dismissal on Plaintiffs' (contradictory) pleading that Ascend was not a party to the contracts, yet had to approve Sweig's termination.

[9] Ascend also argues, for the first time in reply, that Askey (as a corporate officer of Aryze) had a qualified privilege to influence Aryze's actions. *Cress v. Recreation Servs., Inc.*, 341 Ill. App. 3d 149, 175 (2003) ("In addition, where the plaintiff alleges that the defendant, in his capacity as a corporate officer, tortiously interfered with a contract between the plaintiff and that corporation, the plaintiff must plead that the defendant acted outside the qualified privilege he enjoys as a corporate officer to influence the actions of the corporation."). Because the Court dismisses Plaintiffs' tortious interference with contract claim on other grounds, it need not consider this argument.

the extent the interference is the termination of the consulting agreements, Askey had a conditional privilege as a corporate officer and, in any case, the agreements expressly contemplated termination. To plead a tortious interference with business expectancy claim, Plaintiffs must allege: (1) they had a reasonable expectation of entering a valid business relationship; (2) Ascend knew of that expectation; (3) Ascend purposefully interfered to prevent Plaintiffs' legitimate expectation from becoming a valid business relationship; and (4) damages resulted from Ascend's interference. *Atanus v. Am. Airlines, Inc*., 403 Ill. App. 3d 549, 554 (2010). "Actions that form the basis of a tortious interference claim must be directed at third-party business prospects." *McCoy v. Iberdrola Renewables, Inc*., 760 F.3d 674, 686 (7th Cir. 2014).

Ascend argues that Plaintiffs fail to identify the existence of a valid business expectancy with any third party, and to the extent the business expectancy was with Aryze, Plaintiffs had already formed that business relationship. Plaintiffs respond only in a brief footnote. Plaintiffs have therefore waived any arguments in defense of this claim. *United States v. White*, 879 F.2d 1509, 1513 (7th Cir. 1989) ("However, by failing to raise this issue other than by a passing reference in a footnote, White has waived it."); *Rosen v. Mystery Method, Inc*., No. 07 C 5727, 2008 WL 723331, at *6 (N.D. Ill. Mar. 14, 2008) ("A litigant's failure to respond to arguments the opposing party raises in a motion to dismiss operates as a waiver or forfeiture." (collecting cases)). But even if the Court were to consider Plaintiffs' assertion that the frustrated business expectancy "was the opportunity that a [highly successful] Aryze presented," Ascend Doc. No. 31, 21 n.38, this argument fails. As an initial matter, Plaintiffs had a business relationship with Aryze. Plaintiffs entered into several consulting agreements with Aryze and received payment for their services. Therefore, this claim is more properly understood as one for interference with

contract rather than business expectancy. *See Serv. By Air, Inc. v. Phx. Cartage & Air Freight, LLC*, 78 F. Supp. 3d 852, 868 (N.D. Ill. 2015) (Plaintiff's claim "allegedly arose from the contract between Plaintiff and Phoenix, not Plaintiff's mere expectancy of entering into a business relationship with Phoenix; accordingly, they give rise to a claim of intentional interference with contract, not business expectancy."). And as discussed above, that claim fails.

Plaintiffs' theory is that Ascend prevented Aryze from becoming successful and caused Plaintiffs to lose the expected value of their equity. Ascend allegedly sabotaged Aryze and interfered with Plaintiffs' expectation "that [they] would receive substantial economic rewards for [their] work on behalf of and through Aryze, including the value of [their] equity interest that had been increased to 17.5%." Ascend Action, Doc. No. 1 ¶ 148. Plaintiffs provide no cases to support the idea that they can sue for interference with business expectancy when a company does not become as successful as hoped. The Court dismisses Plaintiffs' tortious interference with business expectancy claim against Ascend.

### F.      Equitable Estoppel Claim

Plaintiffs bring equitable estoppel claims against both Defendants. Defendants move to dismiss for the additional reason that equitable estoppel is an affirmative defense and not an independent cause of action. Plaintiffs assert that it is an independent cause of action. As the Illinois Supreme Court has explained, equitable estoppel is "a defense to preclude a party from denying a representation of past or existing fact," while promissory estoppel is a cause of action for "breach of a gratuitous promise of future conduct." *Healy v. Moderne Cap., LLC*, No. 20 C 567, 2020 WL 4464702, at *2 (N.D. Ill. Aug. 4, 2020) (quoting *Matthews v. Chi. Transit Auth.*, 2016 IL 117638, ¶ 94 n.11 (2016)) (internal quotation marks omitted); *see also Telebrands Corp. v. My Pillow, Inc.*, No. 18-CV-06318, 2021 WL 4147695, at *2 (N.D. Ill. Sept. 13, 2021)

("While this district has conflicting guidance on whether equitable estoppel is an affirmative claim in Illinois . . . , the more recent caselaw holding that equitable estoppel is an affirmative defense that prevents a party from asserting a particular claim, not a cause of action, is more persuasive." (collecting cases)).  Thus, the Court dismisses Plaintiffs' equitable estoppel claims against Defendants.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Defendants' motions to dismiss [Ascend Action, Doc. No. 29; Askey Action, Doc. No. 5].  The Court denies Ascend's motion to dismiss based on lack of personal jurisdiction [Ascend Action, Doc. No. 29].  The Court grants in part Ascend's motion to dismiss [Ascend Action, Doc. No. 29] and dismisses without prejudice Count I (Fraud), Count II (Promissory Fraud), Count III (Negligent Misrepresentation), Count IV (Equitable Estoppel), Count V (Breach of Fiduciary Duty), Count VI (Tortious Interference with Contracts), and Count VII (Tortious Interference with Business Expectancy).  The Court denies the remainder of Ascend's motion.  The Court grants in part Askey's motion to dismiss [Askey Action, Doc. No. 5] and dismisses without prejudice Count I (Fraud), Count II (Promissory Fraud), Count III (Negligent Misrepresentation), Count IV (Equitable Estoppel), and Count V (Breach of Fiduciary Duty).  The Court denies the remainder of Askey's motion.  The Court also grants Askey's unopposed motion to file a brief over fifteen pages [Askey Action, Doc. No. 9].

Dated: August 29, 2022

_____
SARA L. ELLIS
United States District Judge

34